```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                          21CR22
                                           Telephone Conference
 5   MEYYA MEYYAPPAN,

 6              Defendant.

 7   ------------------------------x

 8                                         New York, N.Y.
                                           January 14, 2021
 9                                         2:23 p.m.

10   Before:

11                  HON. P. KEVIN CASTEL,

12                                         District Judge

13                         APPEARANCES
14
     AUDREY STRAUSS,
15        Acting United States Attorney for the
          Southern District of New York
16   BY:  JOSHUA A. NAFTALIS
          Assistant United States Attorney
17
     AIDALA & BERTUNA P.C.
18        Attorneys for Defendant
     BY:  ARTHUR LOUIS AIDALA
19
     PRETRIAL SERVICES
20        FRANCESCA TESSIER-MILLER

21

22

23

24

25
```

1          (The Court and all parties appearing telephonically)

2          THE COURT:  This is United States of America against

3    Meyya Meyyappan.  Appearing for the government.

4          MR. NAFTALIS:  Good afternoon, your Honor.  This is

5    Josh Naftalis for the government.

6          THE COURT:  Good afternoon, Mr. Naftalis.

7          And for the defendant.

8          MR. AIDALA:  This is Arthur Aidala.  Good afternoon

9    and happy new year to you, your Honor.

10         THE COURT:  Good afternoon, Mr. Aidala, and happy new

11   year to you.

12         I see that Mr. Meyyappan is also with us; is that

13   correct?

14         THE DEFENDANT:  Yes, your Honor.  Good afternoon.

15         THE COURT:  Good afternoon.

16         Now, Mr. Meyyappan, you have a right to be represented

17   by counsel.  If you cannot afford counsel, one will be

18   appointed at public expense.

19         I understand that you have counsel who you have

20   privately retained; is that correct?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  And that's Mr. Aidala?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Now, Mr. Meyyappan, you have the right to

25   be physically present for this proceeding in a courtroom with

1  the judge on the bench and with your lawyer at your side.  I

2  understand that it is your desire to waive that right to be

3  physically present and to proceed, instead, in the manner in

4  which we are now connected, which is audio and visual; is that

5  correct, sir?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Is it correct, Mr. Aidala, that your

8  client has signed a waiver of a right to be physically present?

9  Is there a signed waiver?

10         MR. AIDALA:  Yes, your Honor.  Your chambers has that,

11 your Honor.

12         THE COURT:  Excellent.  And did you, in fact, sign

13 such a waiver, Mr. Meyyappan?

14         THE DEFENDANT:  Yes, your Honor.

15         THE COURT:  And can you see me and hear me clearly?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  Let me hear from the government or from

18 the defendant, what is the substantial harm to the interest of

19 justice in delaying?  Why is it necessary to proceed now rather

20 than adjourn this to a date when we can all be in the

21 courtroom?

22         MR. NAFTALIS:  Your Honor, this is Josh Naftalis for

23 the government.

24         The reason is twofold, one of which is Mr. Meyyappan

25 consents to doing this by video and audio so that he can have

L1DCMEYP

1    his matter moved along.  The second is the seriousness of the

2    offense, including lying to the government and not delaying in

3    prosecuting that offense.

4              THE COURT:  Do you agree, Mr. Aidala, that there is a

5    basis for a finding that there is substantial harm to the

6    interest of justice by further delay?

7              MR. AIDALA:  Yes, your Honor.

8              THE COURT:  I find that there would be substantial

9    harm to the interest of justice by further delay for,

10   substantially, the reasons identified by the government.  I

11   find that the waiver is knowing and voluntary and it is

12   accepted.

13             Now, Mr. Naftalis, bring me up to date.  Has this

14   defendant appeared anywhere in court prior to this moment in

15   time on these charges?

16             MR. NAFTALIS:  No, your Honor, the defendant has not

17   been arrested.  This is his first appearance in any court on

18   these charges.  So, we're here for his initial appearance, the

19   waiver of indictment, the filing of the information, and a

20   guilty plea and the setting of bail.

21             THE COURT:  Okay.  Mr. Meyyappan, that is the stated

22   purpose of today.  We will discuss issues of pretrial release.

23   You know you have your right to counsel, as I described it.

24   You have the right not to make any statement.  If you have made

25   statements in the past, you need not make any statement today,

L1DCMEYP

1    unless you choose to.  So, any statement you make will be

2    voluntary because you are here and you are being advised by

3    counsel.

4              Now, do you understand all that, Mr. Meyyappan?

5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  Are you a U.S. citizen?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  All right, excellent.

9              Now, one other preliminary matter that I want to get

10   out of the way.

11             I direct the prosecution to comply with its obligation

12   under *Brady v. Maryland* and its progeny to disclose to the

13   defense all information, whether admissible or not, that is

14   favorable to the defendant, material either to guilt or to

15   punishment and known to the prosecution.

16             Possible consequences for noncompliance may include

17   dismissal of individual charges or the entire case, exclusion

18   of evidence, and professional discipline or court sanctions on

19   the attorneys responsible.

20             I will be entering a written order more fully

21   describing this obligation and the possible consequences of

22   failing to meet it.  I direct the prosecution to review and

23   comply with that order.

24             Does the prosecution confirm that it understands its

25   obligations and will fulfill them?

L1DCMEYP

1          MR. NAFTALIS:  Yes, your Honor, of course.

2          THE COURT:  Now, Mr. Meyyappan, I've been advised that

3    you have signed a waiver of indictment; is that correct, sir?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  When did you sign that waiver of

6    indictment?

7          THE DEFENDANT:  I do not have the exact date, your

8    Honor, but I think sometime last week.

9          Do you need the exact date, your Honor?

10          THE COURT:  The document I have in front of me is not

11   dated, that's why I asked the question.

12          Mr. Aidala, can you help in this regard?

13          MR. AIDALA:  I believe I can, your Honor.

14          I believe it was the 5th.

15          Was that it, Josh?

16          MR. NAFTALIS:  Yes.

17          MR. AIDALA:  It was the 5th?

18          MR. NAFTALIS:  5th, yes.

19          THE COURT:  Now, before you signed that waiver of

20   indictment, did you discuss it with your attorney?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  Did you understand that you had the right

23   to have the evidence underlying the charges presented to a

24   grand jury of 23 people and to have those people decide, by

25   unanimous vote, whether you should be charged, and that by

1    signing the waiver of indictment, you gave up that right and

2    allowed the charge to be filed solely on the signature of the

3    United States Attorney?

4              Did you understand that?

5              THE DEFENDANT:  Yes, your Honor, I understand that.

6              THE COURT:  All right.  I find that the waiver of

7    indictment is knowing and voluntary and it is accepted.

8              The charging document, the information which contains

9    the single count of false statement to a federal agent is

10   deemed filed in open court.

11             Mr. Meyyappan, how old are you?

12             THE DEFENDANT:  I am 66 years old, your Honor.

13             MR. AIDALA:  Can I interrupt?  I'm sorry to interrupt.

14   I think we have to put the defendant under oath before we get

15   too far along.

16             THE COURT:  I thank you very much, Mr. Naftalis.  I

17   appreciate that.

18             Mr. Meyyappan, I'm going to put you under oath and I'm

19   going to ask you certain questions and inform you of certain

20   rights.  If I ask you something or I tell you something and you

21   don't quite understand, please let me know, I'll put it into

22   different words.

23             Also, if at any point today you wish to speak in

24   private with your attorney, Mr. Aidala, please let me know and

25   I'll give you the opportunity to have that private conference.

1          Do you understand all that?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  All right.  Please raise your right hand.

4    Do you solemnly swear or affirm that the testimony that you

5    shall give to the Court in this proceeding will be the truth,

6    the whole truth, and nothing but the truth?

7          THE DEFENDANT:  Yes, your Honor, I swear.

8          THE COURT:  You're now under oath and your answers to

9    my questions are subject to the penalties of perjury or making

10   a false statement if you do not answer truthfully.  Also,

11   anything you say today may be used in such a proceeding.

12         Do you understand that?

13         THE DEFENDANT:  Yes, your Honor.

14         THE COURT:  Now, let me go back and ask you again, how

15   old are you?

16         THE DEFENDANT:  I am 66 years old, your Honor.

17         THE COURT:  Tell me, briefly, your educational

18   background.

19         THE DEFENDANT:  I have an undergraduate and a master's

20   and a Ph.D., all in engineering.  My Ph.D. degree I received in

21   1984 from Clarkson University in Upstate New York about 8, 10

22   hours drive from where you are in the north country of New

23   York.

24         Since 1984, I have been working the first 12 years

25   close to New York in Connecticut --

L1DCMEYP

1          THE COURT:  Mr. Meyyappan, I don't need that.  The
2     device is that you hold a Ph.D. degree; is that correct, sir?
3          THE DEFENDANT:  That is correct, your Honor.
4          THE COURT:  Are you now or have you recently been
5     under the care of a medical doctor?
6          THE DEFENDANT:  No, your Honor.
7          THE COURT:  Have you ever been treated for a mental
8     illness?
9          THE DEFENDANT:  No, your Honor.
10          THE COURT:  Do you take any medications?
11          THE DEFENDANT:  I'm a heart patient, so I just take
12     heart medication.
13          THE COURT:  All right.  So, you are under the care of
14     a medical doctor?
15          THE DEFENDANT:  Well, I haven't seen the doctor, but I
16     get the prescription, I take it every day.  I don't know how to
17     interpret that, but, yeah.  Yes.
18          THE COURT:  What medication do you take?
19          THE DEFENDANT:  The medication I take is heart
20     disease.  I had a heart surgery about four years ago and then
21     it is for blood pressure, cholesterol, blood thinning.  It is
22     the usual one that millions of Americans take.
23          THE COURT:  Do those medications affect the clarity of
24     your thinking?
25          THE DEFENDANT:  Oh, no, your Honor.

L1DCMEYP

1          THE COURT:  How do you feel today?

2          THE DEFENDANT:  I feel -- I feel fine, your Honor.

3          THE COURT:  Is your mind clear?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  Mr. Aidala, do you have any doubts as to

6    the defendant's competence to proceed?

7          MR. AIDALA:  No, your Honor.

8          THE COURT:  All right.  Based upon my observations and

9    the responses to my questions, I find that the defendant is

10   fully competent to proceed.

11         Mr. Meyyappan -- let me ask Mr. Aidala first.

12         Has Mr. Meyyappan received, reviewed, and discussed

13   with you the charging document in this case, the information?

14         MR. AIDALA:  Yes, your Honor, we have discussed it

15   extensively.

16         THE COURT:  Is there an application to waive the

17   public reading of the information?

18         MR. AIDALA:  Yes, your Honor.  I would ask that the

19   Court waive the public reading of the information.

20         THE COURT:  And I understand that it is your client's

21   desire today to enter a plea of guilty; is that correct?

22         MR. AIDALA:  Yes, your Honor.

23         THE COURT:  Well, I will provisionally enter a plea of

24   not guilty, but I understand that it is his desire to enter a

25   guilty plea.

1          Mr. Meyyappan, have you discussed the charge against

2     you and the evidence underlying that charge with your lawyer,

3     Mr. Aidala?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  Have you had enough time to consider all

6     of your options in this case?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Are you satisfied with your lawyer's

9     representation of you?

10          THE DEFENDANT:  Yes, your Honor, very much.

11          THE COURT:  I'm now going to advise you of the rights

12     that you would have if you proceeded to a trial and these are

13     the rights that you give up by pleading guilty.

14          Under the Constitution and laws of the United States,

15     you are entitled to a speedy and public trial by an impartial

16     jury on the charges contained in the information.  At such a

17     trial, you would not have to prove you were innocent, the

18     government would be required to prove each element of the crime

19     by proof beyond a reasonable doubt.  Before a jury could find

20     you guilty, they would have to unanimously conclude that you

21     were guilty.  You would not have to prove that you were

22     innocent.

23          Do you understand all of these concepts?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  At such a trial, you would be entitled to

1    be represented by a lawyer.  If you could not afford a lawyer,

2    one would be appointed at public expense.

3              Do you understand that?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  At such a trial, the witnesses for the

6    government would have to come to court to testify, you would be

7    able to see and hear them, your lawyer could question them

8    through cross examination, your lawyer could object to evidence

9    offered by the government, your lawyer could present evidence

10   and could ask the Court to compel witnesses to appear at trial

11   on your behalf.

12             Do you understand all that?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  At such a trial, you would have the right

15   to testify if you chose to do so, you could take the witness

16   stand.  Also, you would have the right not to testify and no

17   one would be permitted to draw any inference or suggestion of

18   guilt from the fact that you decided not to testify.

19             Do you understand all that?

20             THE DEFENDANT:  Yes, your Honor.

21             THE COURT:  If there were a trial and you were found

22   guilty, you would have the right to appeal that finding.

23             Do you understand that?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  Those are the rights you would have if you

proceeded to trial. If I accept a guilty plea from you, there will be no trial. You will proceed to the sentencing phase in which the Court will determine the punishment to be imposed on you. Even now, you have the right to change your mind; instead of pleading guilty, you may plead not guilty and go to trial.

Do you wish to plead not guilty and go to trial?

THE DEFENDANT: No, I do not, your Honor.

THE COURT: All right. Mr. Meyyappan, do you understand that you are charged with making false statements in violation of Section 1001 of Title 18?

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: That charge carries a maximum term of imprisonment of 5 years, a maximum term of supervised release of 3 years, a maximum fine of the greatest of $250,000 or twice the gross pecuniary gain derived from the offense or twice the gross pecuniary loss to persons, other than yourself, resulting from the offense, and a $100 mandatory special assessment.

Do you understand all that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Now, with regard to supervised release, there are terms and conditions attached to it, and if you do not live up to those terms and conditions, you can be returned to prison for the full period of supervised release. So, say you receive a prison term to be followed by a period of 3 years

1    supervised release and you live up to the terms of supervised

2    release for 2 years, but then you violate one of the terms, you

3    can be returned to prison for a full period of 3 years.  That's

4    the way supervised release works.

5              Do you understand all that?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  I think you told me already that you are a

8    United States citizen; is that correct?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  Well, among the consequences of pleading

11   guilty are that you give up valuable civil rights, such as the

12   right to vote, to sit on a jury, to possess a firearm, to hold

13   certain licenses, and to receive certain government benefits.

14             Do you understand all that?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  Are you under any sentence from any court

17   or being prosecuted in any court for any other crime?

18             THE DEFENDANT:  No, your Honor.

19             THE COURT:  In sentencing you, I will receive a

20   presentence report prepared by the office of probation.  That

21   gives me background information and a recommended range of

22   sentence under the sentencing guidelines.  After hearing from

23   the government and from your lawyer, I will make my own

24   determination of the correct guideline range that applies in

25   your case.  Even after determining the guideline range, I need

1    not follow it and can sentence you all the way up to the

2    statute maximum.  The guidelines are advisory and they are one

3    of the factors that the Court takes account of in passing

4    sentence.

5            Do you understand all that?

6            THE DEFENDANT:  Yes, your Honor.

7            THE COURT:  Now, I understand there has been a plea

8    agreement entered into between you and the government; is that

9    correct?

10           THE DEFENDANT:  Yes, your Honor.

11           THE COURT:  Do you have a copy of that in front of

12   you?

13           THE DEFENDANT:  Yes, your Honor.

14           THE COURT:  It appears to be dated December 24th,

15   2020, on the letterhead of the Department of Justice, addressed

16   to Mr. Aidala, sent via email, and appears to be five pages in

17   length and appears to have your signature dated January 4th,

18   2021, and your lawyer's signature dated January 5th, 2021.

19           Is that your plea agreement with the government?  Have

20   I described that accurately?

21           THE DEFENDANT:  Yes, your Honor, you have described it

22   accurately.  That's the one.

23           THE COURT:  Thank you.  Now, did you read that plea

24   agreement before you signed it?

25           THE DEFENDANT:  Yes, your Honor, I read all the five

1    pages.  Thank you.

2            THE COURT:  Did you discuss it with Mr. Aidala before

3    you signed it?

4            THE DEFENDANT:  Yes, your Honor.  I asked him to

5    explain everything, all the legal terms and the implications,

6    and he explained everything to me, your Honor.

7            THE COURT:  Has anyone forced you or threatened you in

8    any way to enter into the plea agreement or to plead guilty?

9            THE DEFENDANT:  Absolutely not, your Honor.

10           THE COURT:  Has anyone promised you anything or given

11   you anything of value in order to get you to enter into the

12   plea agreement or plead guilty?

13           THE DEFENDANT:  No, your Honor.

14           THE COURT:  Does your plea agreement contain all of

15   your understandings with the government?

16           THE DEFENDANT:  Yes, your Honor.

17           THE COURT:  I want you to know that any prediction,

18   calculation, or estimate that anyone has made to you as to what

19   sentence I might give you, what sentence the Court might give

20   you, is not binding on the Court and if it turns out to be

21   wrong, you will not be permitted to withdraw your guilty plea.

22           Do you understand that?

23           THE DEFENDANT:  Yes, your Honor.

24           THE COURT:  Now, one of the features of your plea

25   agreement is that you and the government have agreed on a

L1DCMEYP

1    guideline range that applies in your case, and that stipulated

2    guideline range set forth on page 2 of the plea agreement is

3    zero to 6 months imprisonment; is that correct, sir?

4             THE DEFENDANT:  Yes, your Honor.

5             THE COURT:  The document is binding on you and it's

6    binding on the government, but it's not binding on the Court.

7             THE DEFENDANT:  Yes, your Honor.

8             THE COURT:  I have my own obligation to determine the

9    correct guideline range that applies in your case.  Even after

10   determining the correct guideline range, I need not follow it

11   and can sentence you all the way up to the statute maximum.

12            THE DEFENDANT:  Yes, your Honor.

13            THE COURT:  But the agreement between you and the

14   government provides that if I should sentence you within the

15   stipulated guideline range of zero to 6 months or above that

16   range, the government has agreed not to appeal.  You have

17   agreed that if I sentence you within the stipulated guideline

18   range of zero to 6 months, you will not appeal or otherwise

19   attack the sentence.  You have waived your right to attack the

20   sentence or appeal, unless the sentence is above 6 months and,

21   in that event, the law will only allow you to appeal on the

22   basis that the sentence is unreasonable or contrary to law.

23            Do you understand all of that?

24            THE DEFENDANT:  Yes, your Honor.

25            THE COURT:  And have you discussed this with your

L1DCMEYP

1    lawyer?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Okay.  So, at this point, I'm going to

4    have Mr. Naftalis lay out — on the record, for you,

5    Mr. Meyyappan, and for me — what the elements of the crime

6    charged are and what, in summary, the government's evidence

7    would be if this case proceeded to trial.

8              Mr. Naftalis.

9              MR. NAFTALIS:  Yes, your Honor.  If this case were to

10   proceed to trail, the government would prove the following five

11   elements beyond a reasonable doubt.

12             First, that on or about the date specified in the

13   information — in this case, October 27th, 2020 — the defendant

14   falsified or concealed or covered up a material fact; second,

15   that that fact falsified or concealed or covered up was

16   material; third, that the defendant did so by trick, scheme, or

17   device; fourth, that the defendant acted knowingly and

18   willfully; and fifth, that the falsification, concealment, or

19   coverup was with respect to a matter within the jurisdiction of

20   the government of the United States, here, the jurisdiction is

21   the Southern District of New York, U.S. Attorney's Office, the

22   Federal Bureau of Investigation, and NASA's Office of Inspector

23   General.

24             Would you like me to summarize what the evidence --

25             THE COURT:  What would be the evidence if this case

L1DCMEYP

1    proceeded to trial, in summary fashion, if you will.

2              MR. NAFTALIS:  Yes, your Honor.

3              In summary fashion, the government would prove,

4    through witnesses and documentary evidence, including emails

5    and other correspondence, that Mr. Meyyappan was a senior

6    scientist at NASA.  In his position at NASA, he was subject to

7    certain statutory regulatory agency restrictions regarding

8    outside employment, including a prohibition of associating

9    himself with China or the Chinese government, that he was

10   required to annually file ethical certifications about any

11   employment or associations, that he was a member of and

12   participant in China's Thousand Talent Program, and a professor

13   at a Chinese university.  And that, with respect to the charge,

14   on or about October 27th, 2020, Mr. Meyyappan was interviewed

15   by the FBI, NASA's Office of Inspector General, and the

16   Southern District U.S. Attorney's Office.  During this

17   interview, he falsely stated that he was not a member of the

18   Thousand Talent Program and that he did not hold a

19   professorship at a Chinese university when, in truth and in

20   fact, he was a member of the China Thousand Talent Program and

21   he did hold a professorship at a Chinese university.

22             THE COURT:  Thank you.  Mr. Meyyappan, please tell me,

23   in your own words, what you did that leads you to believe that

24   you're guilty of the crime charged.

25             THE DEFENDANT:  Thank you, your Honor.  I have been

1  working at NASA in California since 1996. In my capacity as a

2  civil servant, that I've known that I'm not allowed to work

3  with or engage with any foreign institutions and universities

4  in any of those countries, paid or unpaid, and I have known

5  that, but on October 27th, 2020, which Mr. Naftalis mentioned,

6  I was interviewed by his office and the FBI and NASA's

7  Inspector General. On those days when they asked me about my

8  involvements with these foreign institutions, I knowingly did

9  not tell them the truth and I actually lied to them about my

10 knowledge of and involvement with those institutions and I did

11 not appropriately answer to those questions. That was my

12 thing. I agree with the, you know, what Mr. Naftalis said.

13         Thank you, your Honor.

14         THE COURT: All right. So, it's not a question of

15 your not properly answering the questions. What you're telling

16 me is that you knowingly lied in response to the questions; is

17 that correct?

18         THE DEFENDANT: Yes, your Honor.

19         THE COURT: Did you know what you were doing was wrong

20 and unlawful?

21         THE DEFENDANT: Yes, your Honor, and I regretted it

22 very much. I've had extensive remorse about this one and I've

23 been -- I've lost my mental peace and I've lost -- yeah, about

24 the things that I did. I'm sincerely sorry. I'm sincerely

25 sorry, your Honor.

L1DCMEYP

<pre>
1              THE COURT:  All right.  Thank you.

2              Mr. Naftalis, do you agree there is a sufficient

3    factual predicate for a plea of guilty?

4              MR. NAFTALIS:  Yes, your Honor.

5              Could we just have the defendant specify, he said he

6    lied about those institutions.  I think we all know what he

7    meant, but I just want to make sure the allocution is complete

8    about what he was misstating to the government.

9              THE DEFENDANT:  Yes, your Honor.  And thank you,

10   Mr. AUSA.  It is everything that you covered.  I actually, in

11   my statement, I agreed with everything that you said.

12             THE COURT:  Let me just ask you point-blank.

13             THE DEFENDANT:  Yes.

14             THE COURT:  Did you lie and deny that you were a

15   visiting professor at a research university in China funded by

16   the People's Republic of China?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  And, in fact, you traveled to China, gave

19   lectures, wrote research papers, and received reimbursement; is

20   that correct, sir?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  And you concealed that in response to

23   questions that would have called for you to honestly disclose

24   that to the people interviewing you; is that correct?

25             THE DEFENDANT:  Yes, your Honor.  And when they asked
</pre>

L1DCMEYP

1   me, I was not forthcoming in that finding.

2            THE COURT:  When you say you were not forthcoming, you

3   lied; right?

4            THE DEFENDANT:  Yes, your Honor.

5            THE COURT:  All right.  Now, is that sufficient,

6   Mr. Naftalis?

7            MR. NAFTALIS:  Yes.  If you could just allocute him

8   that he was a participant in the Thousand Talent Program,

9   because that was the other lie.

10           THE COURT:  Yes.  Is it, in fact, the case,

11  Mr. Meyyappan, that you applied for admission to the Chinese

12  government's Thousand Talent Program in or about 2016?

13           THE DEFENDANT:  Yes, your Honor.

14           THE COURT:  And is it, in fact, the case that you were

15  accepted into and participated in that program, including by

16  traveling to China and recommending others for admission to the

17  Thousand Talent Program; is that correct?

18           THE DEFENDANT:  Yes, your Honor.

19           THE COURT:  And were you asked about your

20  participation in the Thousand Talent Program when you were

21  questioned in October 2020 by agents of the government,

22  including an Assistant United States Attorney?

23           THE DEFENDANT:  Yes, your Honor.

24           THE COURT:  And did you lie to them about that?

25           THE DEFENDANT:  Yes, your Honor.

L1DCMEYP

1          THE COURT:  And did you falsely deny that you had

2     participated in the program?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  Anything else, Mr. Naftalis?

5          MR. NAFTALIS:  No.  Thank you, your Honor.  I

6     appreciate it.

7          THE COURT:  Mr. Aidala, do you agree there is a

8     sufficient factual predicate for a plea of guilty?

9          MR. AIDALA:  Yes, your Honor.

10          THE COURT:  All right.  Mr. Meyyappan, the other

11     question I had for you; were you, in fact, the Chief Scientist

12     of Exploration Technology at the Center for Nanotechnology at

13     NASA's Ames Research Center?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  Do you have any questions for me,

16     Mr. Meyyappan?

17          THE DEFENDANT:  No, your Honor.

18          THE COURT:  How do you plead to count 1 of the

19     information, guilty or not guilty?

20          THE DEFENDANT:  I plead guilty, your Honor.

21          THE COURT:  All right.  Based upon your responses to

22     my questions and my observations of your demeanor, I find that

23     you know your rights, you know the consequences of pleading

24     guilty, and there is a factual basis for a plea of guilty.

25     Your plea of guilty is accepted.

1    Further, I find that your plea agreement was knowingly

2    and voluntarily entered into, including the provisions waiving

3    the right to appeal or collaterally attack a sentence under

4    specified circumstances.

5    I will order a presentence investigation and report

6    and direct that no interview of you take place unless your

7    lawyer is present.  It's important that you be candid,

8    truthful, honest with the people who prepare the presentence

9    report, tell them the good things and even the not-so-good

10    things because the report will be important in my decision on

11    sentencing.  Before the day of sentencing, I urge you to review

12    that report, to read it carefully, and if there are any

13    mistakes, point them out to Mr. Aidala so he can point them out

14    to me.

15    Madam deputy, if you're on the line, could you please

16    provide us with a sentencing date.

17    THE DEPUTY CLERK:  Yes.  I was wondering if I should

18    go more than four months out.  The probation officer, can you

19    help me with this, the pretrial services officer.

20    MS. MILLER:  This is Officer Francesca Miller on the

21    line.

22    The standard is usually three months, but due to the

23    circumstances, four months should be fine.

24    THE DEPUTY CLERK:  Okay, four months.  June 16th at

25    2:00 p.m.

L1DCMEYP

1          THE COURT:  Does that work for you, Mr. Aidala?

2          MR. AIDALA:  Yes, your Honor.

3          THE COURT:  And Mr. Naftalis?

4          MR. NAFTALIS:  Yes, your Honor.

5          THE COURT:  So June 16 at 2:00 p.m.

6          Mr. Meyyappan, you must be physically present in

7   Courtroom 11D, 500 Pearl Street, on that date at that time or

8   in such location as is directed, and date and time directed, or

9   you will be guilty of a separate crime, bail jumping, and

10  subject to imprisonment for up to 5 years and a fine of up to

11  $250,000 in addition to the penalty imposed for the crime for

12  which you have just pled guilty.

13          Do you understand all that?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  All right.  Is there anything further from

16  the government?

17          MR. NAFTALIS:  Only that we have to set bail, your

18  Honor.

19          THE COURT:  I see.  Thank you.  I understand, let me

20  hear from pretrial services, but I understand that a bail

21  package of $250,000 personal recognizance bond co-signed by two

22  financially responsible people, release on the defendant's own

23  signature with other conditions met by January 27, pretrial

24  services supervision, surrender of all travel documents and a

25  prohibition on applying for any travel documents, travel

1   restricted to the Southern District of New York, Eastern

2   District of New York, and Northern District of California and

3   points in between solely for travel purposes and refrain from

4   conduct alleged within the information.

5           First of all, from pretrial services, is that your

6   recommendation?

7           MS. MILLER:  Yes.  This is Officer Francesca Miller on

8   the line.

9           We are in agreement of those terms.

10          THE COURT:  All right.  Let me inquire of the

11  government.  Is that acceptable to the government?

12          MR. NAFTALIS:  Yes, your Honor.

13          THE COURT:  And is that acceptable to the defendant?

14          MR. AIDALA:  Yes, your Honor.

15          THE COURT:  All right.  So those conditions are

16  imposed.  An order reflecting those bail conditions will be

17  entered on the docket.

18          Anything further, Mr. Naftalis?

19          MR. NAFTALIS:  No.  Thank you, your Honor.

20          THE COURT:  Anything further, Mr. Aidala?

21          MR. AIDALA:  No, your Honor.  Thank you very much.

22          THE COURT:  All right.  Thank you, all, very much.

23  Thank you, Mr. Meyyappan.

24          We are adjourned.

25                            *  *  *